### 73434. COLE v. ROBERTS et al.
(352 SE2d 841)

BIRDSONG, Chief Judge.

Bailment — Sufficiency of Evidence to Establish Negligence and Damages. In April 1982, the Robertses, father and two sons, made arrangements with Norman, the business partner of Cole, d/b/a Plowstock Farms, to process and sell the Robertses' cucumber crop. Prior to the trial, the father died and Norman was discharged in bankruptcy. One of the Roberts sons, as plaintiff, established that during planting season, the Robertses planted about 50 acres of cucumbers, planting roughly four 12-acre plots at a time, staggering the plantings several days apart. The purpose of the staggered planting was to ensure that all the crop did not mature to harvest at the same time inasmuch as cucumbers are a highly perishable crop and must be picked and delivered to the produce broker within a very short time following maturity. Cucumbers are graded into several different grades such as super select, select, large, small, etc. Each size brings a different price. Cucumbers mature so fast at harvest time that 24 hours prolonged growth in the field makes the cucumber too large and large cucumbers are rejected as culls as are those that are bruised or are heat damaged by the sun.

The Robertses hired a crew of transient Mexican pickers to harvest the crop. Norman came to the acreage on May 23, 1982, and advised the Robertses that harvesting should commence on May 24. The pickers filled baskets as the cucumbers were picked. These baskets were checked by one of the Robertses and if the basket did not contain any overly large cucumbers or did not contain damaged cucumbers, the basket was accepted and dumped into a trailer. The picker was given a small chip. At the end of the day, each picker was paid based upon the number of chips presented. A constant count of the number of chips issued was kept. When the trailers were filled, the trailers were taken to Plowstock and parked out front of the grading and storage facility. The trailers were emptied and taken back to the field for refilling.

Roberts established the first two pickings of the first 12 acres produced a good quality of cucumbers. The remaining cucumbers in that first 12 acres then became questionably large, and the pickers moved to the second (later) planted 12-acre plot. Because the pickers were slow in getting into an appropriate routine, the harvest began to fall slightly behind. The Robertses believed there were some harvest-

able cucumbers in the first 12 acres but apparently did not feel they had enough time to spend in the first field at the expense of the harvest of the other fields as they became ready for harvest. Because they were falling slightly behind, Norman agreed to furnish a crew to help in the harvest. The crew furnished by Norman was assigned the task of going over the first 12 acres. The pickers were not supervised by Roberts. They picked a large number of bins, a measuring container not used by the Robertses. These bins apparently were filled with cucumbers too large for acceptance. As a result when these cucumbers were transported to the grading and packing facility, well over half of these cucumbers were rejected by the mechanical grader and were culled from the harvest. There were so many culls that Norman and Cole were required to hire a truck to remove the large number of culls from the premises for destruction. Apparently this happened on only one occasion.

At the end of the first day of packing of the Robertses' crop of cucumbers (May 24, 1982), Norman furnished the Robertses a "pack out slip." This reflected the number of boxes of cucumbers in each of the several sizes that were attributable to the Robertses. Subsequently, this amount of cucumbers, by size, was credited with the sale price and the amount due the Robertses. Thereafter in spite of repeated requests by the Robertses for pack out slips for the number of boxes or cartons packed that were attributable to them, no further pack out slips were furnished. Plowstock kept no record of culls but the Robertses gave evidence that the percentage of culls should never have exceeded 25%, for the continuing quality of their harvest equalled the first day's quality which ran at about 18%. Likewise the number of each size of cucumber in each day's harvest was the substantial equivalent of the first day's harvest which was reflected by the first day's pack out slip because the quality of the harvest remained constant throughout the picking period except for the bins picked by Norman's crew. These bins were excluded from the Robertses' claim. Thus, there was competent evidence that all the trailers of cucumbers from the beginning to the end of the harvest were approximately the same and what the packing slip showed for the first day was representative of all other cucumbers provided for packing and sale.

A computation made by the Robertses from the sale vouchers of all sizes of cucumbers sold as furnished to them by Plowstock reflected that Plowstock packed and sold 6,144 boxes and cartons of cucumbers attributable to the Robertses' harvest. The Robertses offered evidence that an average of two buckets of cucumbers as picked and transported from the field to the packing house would fill one box. Thus, simple mathematics showed that it took approximately 12,288 buckets of cucumbers to fill the 6,144 boxes packed and sold by Plowstock on behalf of the Robertses. Plowstock paid the

Robertses $19,104 as the net proceeds of the numerous sales occurring from May 24 until the first week in June when the harvestable cucumbers were exhausted. The Robertses offered evidence that based on the count of chips, their Mexican crew picked 27,647 buckets. Of these 27,647 buckets, approximately 2,500 were delivered to another packer and were excluded from this claim. Also, the 61 bins picked by Norman's crew were excluded. The Robertses thus established that instead of 12,288 buckets (after deductions for culls) they actually delivered approximately 25,000 buckets. After culls were deleted from this count, the Robertses argued that half their crop had not been credited to their account.

Other evidence was offered that Plowstock was overburdened with the crops of too many farmers. The design of Plowstock in 1982 (the first year of operations as a produce packer and broker) was to handle the produce of 5-6 farmers plus the crops of the partners of Plowstock, Cole, and Norman. Plowstock ended up trying to handle the crops of triple that number. As a result, the Robertses in spite of reassurances by Norman that all was going well, maintained they saw their cucumbers were not being cleaned, waxed and packed on a daily basis as was required to preserve so perishable an item as a cucumber but that on occasion their cucumbers sat out in the June sun for as much as 24 or more hours. Additionally, the Robertses showed that Norman, who was charged with the record keeping of Plowstock, did not maintain a current ledger for items received, culled, packed and sold. In fact it was established that Norman's record keeping was so negligent that his partner Cole filed a complaint against Norman for an accounting and distribution of partnership assets (including the farming operation which was separate from the Plowstock business). This apparently ended with Norman's bankruptcy action.

At the completion of the Robertses' evidence, Cole moved for a directed verdict contending that the Robertses had not shown negligence nor shown with any specificity the amount of damages suffered except by bare speculation and conjecture. At the completion of all the evidence, Cole renewed his motion for a directed verdict on the same grounds. The jury returned a verdict for the Robertses in the amount of $19,104 plus interest from the date of the last delivery of cucumbers by the Robertses to Plowstock. The trial court entered judgment for the Robertses based upon the jury's verdict. Cole brings this appeal urging error in the trial court's denial of the motions for directed verdict and a motion for judgment notwithstanding the verdict. *Held*:

The basis for Cole's appeal is the same as that argued to the trial court; i.e., that the Robertses offered no evidence of negligence by the bailee, Plowstock and that there was insufficient evidence to support the jury's verdict which perforce had to be based upon pure guess-

work and speculation.

We reject these contentions. The jury was warranted in believing upon the basis of competent evidence that the record keeping was so ineffective that Plowstock could not avoid intermingling cucumbers of the several farmers whose produce was being brokered. The jury also was warranted in believing that the number of farmers being serviced so overburdened Plowstock that the highly perishable produce was not processed expeditiously and either allowed to become damaged so as to be non-saleable or, if sold, was either not credited at all or credited to the wrong farmer. Although there was evidence offered by Cole that would have supported a finding that due care was maintained by the bailee, Plowstock, it was for the jury to resolve that dispute. The jury chose to believe the evidence offered by the Robertses and we as an appellate court are loath, indeed we are not permitted, to substitute our judgment for that of the jury. *Carmichael Tile Co. v. McClelland*, 213 Ga. 656, 661 (100 SE2d 902). Our duty is to review the judgment entered by the trial court to ascertain whether there is any evidence to authorize the judgment. If there was evidence of negligence construed from the point of view that we are to uphold the verdict rather than to reject it, then we must approve. *Bell v. Brewton*, 139 Ga. App. 463, 464 (228 SE2d 600). We entertain no doubt there was some evidence that Plowstock was negligent in the receiving, handling, disposing and accounting for the cucumbers furnished by the Robertses.

Likewise we find a sufficient basis for the determination of damages suffered by the Robertses. There was a basis to establish a running count of cucumbers acknowledged to have been received by Plowstock as to size and sale price throughout the picking and selling period. This was shown to be based upon a count of 6,144 boxes filled from approximately 12,288 buckets. It was shown that the quality of cucumbers throughout the entire period was substantially the same and therefore the relative amount of boxes of different sizes should have remained constant. The only discrepancy was that Plowstock reported receiving and selling only 6,144 boxes and cartons made up of 12,288 buckets and the Robertses established a delivery of 25,000 buckets. The jury would have no difficulty arriving at a determination that half of the Robertses' crop was not credited to them or was allowed to become unsaleable without any records being kept of the culls or destruction of damaged cucumbers. That the jury made that determination is manifest in its verdict which equaled the amount of sales for which Plowstock paid the Robertses for the undisputed half of the crop.

"The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere

difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted." *Summerfield v. Decinque*, 143 Ga. App. 351, 352 (2) (238 SE2d 712). We find no error in the denial of the motion for directed verdict, nor the motion for judgment non obstante veridicto or alternatively a new trial.

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED JANUARY 15, 1987.

*C. Saxby Chambliss*, for appellant.
*Larkin M. Fowler, Jr., Lester M. Castellow*, for appellees.